IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 15-20020-03/09/10-JAR |
| JOSE RIOS-MORALES, JOSE MARIN SORIANO, AND GUILLERMO MORALES, | |
| Defendants. | |

## MEMORANDUM & ORDER

This case involves an eighteen-count superseding indictment alleging, among other offenses, a conspiracy involving eleven named Defendants and others to distribute and possess with the intent to distribute more than 50 grams of methamphetamine in the District of Kansas and elsewhere between June 1, 2012, and February 28, 2014. The Federal Bureau of Investigation ("FBI") began its investigation into the alleged conspiracy in 2012. As part of its investigation, the FBI conducted more than two dozen controlled buys and obtained wiretap authorization orders and extensions on various Target Telephones. This matter comes before the Court on Defendant Guillermo Morales's Motion for Discovery (Doc. 189) and Motion to Dismiss Indictment (Doc. 190), and Defendant Jose Rios-Morales's Motion to Suppress Intercepted Conversations and Evidence Obtained Therefrom (Doc. 197) and Motion Regarding Admissibility of Opinion Testimony by Law Enforcement (Doc. 273). Defendant Jose Soriano joins in Defendant Morales's Motion to Dismiss and Defendant Rios-Morales's Motion to Suppress. The Court held a hearing on Defendants' motions on June 16, 2016. The motions are fully briefed and having considered the parties' briefs and arguments at the June 16 hearing, the Court is prepared to rule. For the reasons stated more fully below, the Court grants Defendant

Morales's motion for discovery, denies his motion to dismiss, and denies Defendant Rios-Morales's motion to suppress.  Defendant Rios-Morales's motion in limine remains under advisement.

## I.       Defendant Morales—Motion for Discovery and Motion to Dismiss (Docs. 189 & 190)

Defendant Guillermo Morales moves for discovery and for dismissal based on the United States Department of Justice's ("DOJ") *Petite* Policy.  Defendant Jose Soriano joins in these motions.  Defendant Morales alleges the following facts related to these motions: that on December 31, 2013, he was arrested by the Kansas Highway Patrol in Clark County, Kansas pursuant to a car stop that disclosed approximately ten pounds of methamphetamine; that he was convicted in Kansas state court and served a sentence of seven months' imprisonment; that his probation was transferred to his home state of California; that he moved to California to live with his sister and complied with all conditions of his probation; and that he was indicted on March 19, 2015, in the present case for acts that are substantially similar to those for which he was convicted in Kansas.  Defendant Soriano argues that he is similarly situated to Defendant Morales in that he was arrested with Morales on December 31, 2013, was convicted in Kansas state court, served a term of imprisonment, and complied with all terms of his probation until his arrest for the instant offense.

The DOJ's *Petite* Policy, so named after the Supreme Court decision in *Petite v. United States*,[1] precludes federal prosecution following a prior state prosecution based on substantially the same acts or transactions unless

> three substantive prerequisites are satisfied: first, the matter must involve a substantial federal interest; second, the prior prosecution must have left that interest demonstrably unvindicated; and third, applying the same test that is

---

[1] 361 U.S. 529 (1960).

applicable to all federal prosecutions, the government must believe that the defendant's conduct constitutes a federal offense.[2]

Further, prosecutors must obtain prior approval from an Assistant Attorney General before pursuing cases pursuant to this Policy.[3]  Defendant argues that the indictment in this case alleges acts similar to those that led to his previous Kansas conviction, and that prosecutors here did not seek prior approval of an Assistant Attorney General before bringing these charges.  Thus, he argues, dismissal of the indictment is warranted because the Government violated the *Petite* Policy.

In *United States v. Thompson*, the Tenth Circuit, sitting en banc, held that the *Petite* Policy does not confer enforceable rights or benefits on criminal defendants.[4]  Since *Thompson*, the Tenth Circuit has consistently held that the *Petite* Policy does not confer any enforceable rights upon criminal defendants, and thus a violation of the Policy does not provide grounds for dismissal.[5]  Rather, the *Petite* Policy "'is merely a housekeeping provision of the Department' that, 'at most,' serves as 'a guide for the use of the Attorney General and the United States Attorneys in the field.'"[6]  Other Circuits are in accord.[7]

However, as Defendant notes, Chief Judge Seth in *Thompson* wrote a dissent in which he explained that the *Petite* Policy was designed as both a response to the concerns of the Supreme

---

[2]*United States v. Barrett*, 496 F.3d 1079, 1120 (10th Cir. 2007); United States Attorneys' Manual, Title 9: Criminal, § 9-2.031, Dual and Successive Prosecution Policy ("Petite Policy"), available at https://www.justice.gov/usam/usam-9-2000-authority-us-attorney-criminal-division-mattersprior-approvals#9-2.031 (last visited June 30, 2016).

[3]*United States v. Raymer*, 941 F.2d 1031, 1037 n.2 (10th Cir. 1991).

[4]579 F.2d 1184, 1188–89 (10th Cir. 1978).

[5]*United States v. Valenzuela*, 584 F.2d 374, 376–77 (10th Cir. 1978); *Barrett*, 496 F.3d at 1120–21; *Raymer*, 941 F.2d at 1037 ("We consistently have recognized the dual sovereignty rule in holding that a defendant is not entitled to dismissal of an indictment even if the government does not comply with its *Petite* policy.").

[6]*Barrett*, 496 F.3d at 1120 (quoting *Thompson*, 579 F.2d at 1189).

[7]*E.g., United States v. Fletcher*, 634 F.3d 395, 405 (7th Cir. 2011), *as amended* (Feb. 23, 2011); *United States v. Snell*, 592 F.2d 1083, 1087 (9th Cir. 1979); *United States v. McCoy*, 977 F.2d 706, 712 (1st Cir. 1992).

Court in *Petite* and as a "guaranty against double jeopardy."[8]  Thus, because the Policy was designed "to protect the individual," a defendant should receive the benefit of it.[9]  Chief Judge Seth was joined in his dissent by two other members of the eight-member en banc panel.[10]  In a Third Circuit opinion, another judge has advocated in a dissent that the Supreme Court should revisit the impact of the *Petite* Policy.[11]

As it stands, Supreme Court and Tenth Circuit precedent is clear that the *Petite* Policy confers no rights or benefits on individual defendants, and that a violation of the *Petite* Policy does not provide a basis for dismissal.  Accordingly, the Court denies Defendant's motion to dismiss based on alleged violations of the *Petite* policy, and the Court will award no further relief to Defendant if actual violations of the policy are discovered.  However, the Court is mindful that in the event the Tenth Circuit decides to revisit the issue on appeal, a full record as to the operation of the *Petite* Policy in this case would be necessary.  Thus, the Court grants Defendant's motion for discovery.

## II.   Defendant Rios-Morales—Motion to Suppress Intercepted Conversations and Evidence Obtained Therefrom (Doc. 197)

Defendant Jose Rios-Morales moves to suppress conversations that the Government intercepted pursuant to Title III wiretap orders, as well as other evidence derived from these conversations.  Defendant Jose Soriano joins in this motion.

As part of its investigation into the conspiracy charged in this case, the Government sought and obtained a wiretap order and three extensions from Judge Kathryn H. Vratil approving the interception of communications over Target Telephone 1.  This phone belonged to

---

[8]*Thompson*, 579 F.2d at 1190 (Seth, C.J., dissenting).

[9]*Id.* at 1190–92.

[10]*Id.* at 1189.

[11]*United States v. Wilson*, 413 F.3d 382, 390–401 (3d Cir. 2005) (Aldisert, J., dissenting).

Defendant Sifuentes-Cabrera, and the Government allegedly intercepted conversations between Sifuentes-Cabrera and Defendant Rios-Morales on this phone.  The affidavit in support of each wiretap application stated, "[t]he monitoring location is located in a secured office at the FBI, in the Western District of Missouri."[12]  The orders authorizing wiretaps each provided that "in the event that the Target Telephones are transferred outside the territorial jurisdiction of this Court, interceptions may continue without interruption."[13]  Ultimately, the Government intercepted several communications pursuant to these orders where both the phone and monitoring post were located outside the District of Kansas.

Defendant argues that because the wiretap orders authorized the interception of communications on phones outside the District of Kansas, the wiretap orders were facially insufficient pursuant to 18 U.S.C. § 2518(3).  Under § 2518(3), a judge may

> enter an ex parte order, as requested or as modified, authorizing or approving interception of wire, oral, or electronic communications within the territorial jurisdiction of the court in which the judge is sitting (and outside that jurisdiction within the United States in the case of a mobile interception device authorized by a Federal court within such jurisdiction).[14]

Any "aggrieved person," meaning a person who was a party to any intercepted communication or a person against whom the interception was directed, may move to suppress the contents of the communication on the basis that the authorization order was insufficient on its face.[15]  Defendant argues that the phrase "mobile interception device" in § 2518(3) refers to the device used by law enforcement to track phone calls, not the phone being intercepted.  He argues that § 2518(3) does not allow for interception of phones outside the territorial jurisdiction of the

---

[12]Doc. 197, Exs. 1, 2, 3, 4.

[13]Doc. 197, Exs. 5, 6, 7, 8.

[14]18 U.S.C. § 2518(3).

[15]18 U.S.C. § 2518(10)(a); 18 U.S.C. § 2510 (defining "aggrieved person").

authorizing court.  Thus, he contends that the orders and extensions for Target Telephone 1 were facially insufficient.

For support, Defendant relies heavily on the concurring opinion of Judge DeMoss in the Fifth Circuit case *United States v. North*.[16]  In *North*, Judge DeMoss explained his view that the term "mobile interception device" "refers to the mobility of the device used to intercept communications, not the mobility of the tapped phone."[17]  Accordingly, the court found that the district court exceeded its authority in allowing the interception of communications on phones outside the territorial jurisdiction of the court.[18]  Defendant urges the Court to follow Judge Demoss's opinion in *North* and suppress the communications intercepted over Target Telephone 1.  By contrast, the Government points to the Seventh Circuit decision in *United States v. Ramirez*, in which the court held that the term "mobile interception device" refers to "the mobility of what is intercepted rather than [] the irrelevant mobility or stionarity of the device."[19]  Thus, the court in *Ramirez* held that it was proper for the district court to authorize a wiretap "regardless of where the phone or the listening post was."[20]

The Tenth Circuit has not addressed whether § 2518(3) allows courts to authorize the interception of communications over phones taken outside the authorizing court's territorial jurisdiction.  However, courts in this District have repeatedly held that § 2518(3) allows for the interception of wiretap communications over phones taken outside the District of Kansas.[21]  In

---

[16]735 F.3d 212 (5th Cir. 2013).

[17]*Id.* at 218 (DeMoss, J., concurring).

[18]*Id.*

[19]112 F.3d 849, 853 (7th Cir. 1997).

[20]*Id.*

[21]*United States v. Vasquez-Garcia*, No. 10-40014-JTM, 2014 WL 7359490 (D. Kan. Dec. 23, 2014); *United States v. Dahda*, No. 12-20083-01-KHV, 2014 WL 1493120 (D. Kan. Apr. 2, 2014), *report and recommendation adopted*, CRIM.A. 12-20083-02, 2014 WL 1493122 (D. Kan. Apr. 16, 2014); *United States v. Soto-Camargo*, No. 14-cr-40129-DDC, 2015 WL 3823020 (D. Kan. June 19, 2015).

*United States v. Soto-Camargo*, Judge Crabtree explained why the court chose to follow the

decision in *Ramirez* over *North*:

> The Court declines to adopt the Fifth Circuit's reasoning in *North*. As explained in *Ramirez,* a literal interpretation of 18 U.S.C. § 2518(3) "makes very little sense." Indeed, Judge DeMoss' concurrence in *North* would require courts to examine just the mobility of the interception device to determine whether a wiretap may capture cellular communications when both the phone and listening post are outside of the issuing district.  If the interception device is mobile, the wiretap would be valid.  But if it is stationary, the wiretap would be invalid.  Such strict adherence to the plain language of 18 U.S.C. § 2518(3) would not protect the privacy interests of wiretap targets.  Rather, it seems that it would only encourage law enforcement to use mobile interception devices.[22]

This Court agrees with the other courts in this District and finds that § 2518(3) permits courts to

authorize the interception of communications over phones taken outside the District of Kansas.

Thus, the Court finds that the wiretap orders and extensions as to Target Telephone 1 were not

facially insufficient.  Accordingly, the Court denies Defendant's motion to suppress.

## III.    Defendant Rios-Morales—Motion in Limine Regarding the Admissibility of Opinion Testimony by Law Enforcement (Doc. 273)

Defendant Rios-Morales moves, *in limine*, for an order finding inadmissible the opinion

testimony of law enforcement officials interpreting the general meaning of intercepted telephone

conversations.  The Government asserts in its response that it intends to present testimony from

cooperating witnesses interpreting the meaning of the intercepted conversations, followed by

expert testimony of at least one FBI agent "regarding the use and meaning of coded language and

phrases."[23]  The Government also intends to present fact witness testimony from law

enforcement officers regarding the use of specific phrases and coded language in the intercepted

conversations, based on the officers' familiarity with this case.  Defendant argues that such

---

[22]*Soto-Camargo*, 2015 WL 3823020, at *4.

[23]Doc. 276 at 3.

testimony is inadmissible pursuant to Federal Rules of Evidence 701, 702, 704, and 403.   At the

June 16 hearing, the Government informed the Court that it did not intend to present law

enforcement officer testimony concerning the meaning of any intercepted conversations if a

cooperating witness would be available to testify as to the meaning of the conversations based on

personal knowledge.

A lay witness's opinion testimony regarding the meaning of conversations he or she has

with the defendant is admissible based on the witness's participation in the conversations.[24]

Additionally, out-of-court statements made by a defendant to a co-conspirator in furtherance of

the conspiracy are admissible against the defendant as non-hearsay statements if the government

proves the existence of the conspiracy and proves that the statement falls within the definition of

Federal Rule of Evidence 801(d)(2)(E).[25]  Thus, if the Government presents statements by

Defendant that qualify under the co-conspirator exclusion to the hearsay rule through a co-

conspirator who participated in the conversations with Defendant, the statements and the

witness's perceptions will be admissible.  The Government has indicated that it may attempt to

present lay opinion testimony regarding the meaning of intercepted conversations in this manner.

Under these circumstances, law enforcement officer testimony interpreting the meaning of

intercepted conversations would not be necessary.  Thus, the Court defers ruling on Defendant's

motion until trial or until such time as it will be clear the manner in which the Government will

present its evidence.  Accordingly, Defendant's motion remains under advisement.

---

[24]*United States v. Sneed*, 34 F.3d 1570, 1581 (10th Cir. 1994) ("A witness may base his testimony upon his perceptions of conversations and, thus, may clarify conversations that are abbreviated, composed of unfinished sentences and punctuated with ambiguous references to events that were clear only to the conversation participants.") (citing *United States v. Awan*, 966 F.2d 1103, 1110 (3d Cir. 1988))

[25]Fed. R. Evid. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Guillermo Morales's Motion for Discovery (Doc. 189) is **granted**. The Government shall comply with the requests for discovery set forth in Defendant's motion.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant Guillermo Morales's Motion to Dismiss Indictment (Doc. 190) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant Jose Rios-Morales's Motion to Suppress Intercepted Conversations and Evidence Obtained Therefrom (Doc. 197) is **denied**.

**IT IS FURTHER ORDERED BY THE COURT** that Defendant Jose Rios-Morales's Motion in Limine Regarding Admissibility of Opinion Testimony by Law Enforcement (Doc. 273) remains **under advisement**.

**IT IS SO ORDERED.**

Dated: July 6, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE