**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>  Plaintiff,<br><br>  v.<br><br>**GUILLERMO MORALES,**<br><br>  Defendant. | Case No. 15-20020-10-JAR |

**ORDER DISMISSING MOTION FOR RELEASE**

This matter comes before the Court on Defendant Gillermo Morales' *pro se* letter (Doc. 611) requesting the Court's "help . . . to get released with in this (Care ACT) or with in Compasionate release form."[1]  Defendant seeks immediate release to home confinement due to the COVID-19 pandemic.  The Government opposes Defendant's motion.[2]  For the reasons explained below, the Court dismisses Defendant's request for lack of jurisdiction.

**I.     Background**

On April 17, 2017, Defendant pled guilty to one count of conspiracy to distribute a mixture and substance containing more than 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) pursuant to a Rule 11(c)(1)(C) plea agreement.[3]  On July 24, 2017 the Court sentenced Defendant to 108 months' imprisonment to be served consecutive to a state-court sentence, and a four-year term of supervised release.[4]  Defendant is currently

---

[1] Doc. 611 at 2 (errors in original).

[2] Doc. 613.

[3] Doc. 410.

[4] Doc. 432; *see also* Doc. 431.

incarcerated at Terminal Island FCI. He is thirty-two years old, and his projected release date is May 3, 2023.

On May 26, 2020, Defendant filed this letter seeking immediate release to home confinement. Because Defendant is proceeding *pro se*,[5] the Court liberally construes his filing as a motion for relief under both the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act")[6] and the First Step Act.[7] Defendant states he has tested negative for COVID-19 twice, but still fears for his life because at Terminal FCI where he is housed, there have been eight COVID-related deaths among inmates. He provides information about his familial support, his employability, and his ability to obtain health insurance if released. Defendant references having asthma but states the Bureau of Prisons ("BOP") medical staff does not treat him for asthma and his prison medical records do not reflect that he has asthma.[8]

The Government construes Defendant's motion as only seeking relief under the CARES Act. It argues the BOP has the sole authority to determine whether an inmate is an appropriate candidate for home confinement under the CARES Act, and that courts do not have power to grant relief on this basis.[9] Thus, the Government urges the Court to dismiss Defendant's motion for lack of jurisdiction.

Under Standing Order 19-1, the Federal Public Defender ("FPD") was appointed to represent indigent defendants who may qualify to seek compassionate release under section 603(b) of the First Step Act. That Order was supplemented by Administrative Order 20-8, which

---

[5]*See, e.g.*, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[6]Pub. L. No. 116-136 (enacted March 27, 2020).

[7]Pub. L. No. 115-391.

[8]Doc. 611 at 5.

[9]*See United States v. Nash*, No. 19-40022-DDC, 2020 WL 1974305, at *3 (D. Kan. Apr. 24, 2020); *accord. United States v. Daniels*, No. 8-0464-SLB, 2020 WL 1938973, at *1–2 (N.D. Ala., April 22, 2020).

established procedures to address motions brought on grounds related to the COVID-19 pandemic. Under that Order, the FPD must notify the Court within fifteen days of filing of any *pro se* compassionate release motion whether it intends to enter an appearance on behalf of the defendant, or seek additional time make such determination. In an e-mail to the undersigned dated June 16, 2020, the FPD's office informed the Court that it would not be entering an appearance on Defendant's behalf, nor would it request appointment of a CJA Panel attorney. Accordingly, Defendant's motion proceeds *pro se*.

## II.   Discussion

As previously mentioned, the Court construes Defendant's motion as one for relief under both the First Step Act and the CARES Act. The Court will address each basis for relief in turn.

### A.   First Step Act

"[I]t is well-settled that '[a] district court is authorized to modify a [d]efendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so.'"[10] Section 3582(c) permits a court to modify a term of imprisonment for compassionate release only if certain exceptions apply. Until recently, these exceptions required the BOP move on a defendant's behalf. In 2018, however, the First Step Act modified the compassionate release statute, permitting a defendant to bring his own motion for relief.[11] Since then, a defendant may bring a motion for compassionate release from custody only if he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's

---

[10] *United States v. White*, 765 F.3d 1240, 1244 (10th Cir. 2014) (quoting *United States v. Blackwell,* 81 F.3d 945, 947 (10th Cir. 1996)).

[11] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

facility, whichever is earlier. . . ."[12]  Unless a defendant meets this exhaustion requirement, the court lacks jurisdiction to modify the sentence or grant relief.[13]

Here, Defendant states that he "tried reaching out to the Warden here at (Terminal Island) about almost 2 months ago in reguard [to] the Care ACT law."[14]  However, his motion does not indicate that he made a request to the Warden for relief under § 3582(c).  Nor does Defendant indicate that he has exhausted all of his administrative rights to appeal the BOP's failure to bring such a motion on his behalf.  Thus, neither condition of § 3582(c) is met.  As this Court has previously held, failure to satisfy the filing requirement in § 3582(c)(1)(A) bars defendants from filing motions for compassionate release because courts lack authority "to craft an exception to these requirements for defendants seeking release during the COVID-19 pandemic."[15]  This result is supported by both the plain text of § 3582(c)(1)(A) and Supreme Court precedent explaining that when Congress provides a statutory exhaustion provision, "courts have a role in creating exceptions only if Congress wants them to," and thus mandatory exhaustion statutes "establish mandatory exhaustion regimes, foreclosing judicial discretion."[16]

Given the Court's conclusion that Defendant has not exhausted his administrative remedies for relief under the First Step Act, it does not decide whether he has established "extraordinary and compelling reasons" for his release.  Though the Court is sympathetic to Defendant's situation and the exigent circumstances surrounding the COVID-19 pandemic, it

---

[12]18 U.S.C. § 3582(c)(1)(A).

[13]*United States v. Johnson*, 766 F. App'x 648, 650 (10th Cir. 2019) (holding that without an express statutory authorization, a court lacks jurisdiction to modify a sentence).

[14]Doc. 611 at 1 (errors and formatting in original).

[15]*See, e.g.*, *United States v. Boyle*, No. 18-20092-JAR, 2020 WL 1819887, at 2 (citing *United States v. Alam*, No. 15-20351, 2020 WL 1703881, at *2 (E.D. Mich. Apr. 8, 2020) (collecting cases); *United States v. Perry*, No. 18-cr-00480-PAB, 2020 WL 1676773, at *1–2 (D. Colo. Apr. 3, 2020) (finding defendant's argument that the court could read an exception into the exhaustion requirement "unpersuasive" and "unsupported by case law")).

[16]*Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016) (citations omitted).

"may not take action where it lacks the statutory authority to do so."[17]  Accordingly, the Court lacks jurisdiction over Defendant's request for a sentence reduction pursuant to the First Step Act.

### B. CARES Act

Defendant also seeks relief from the Court pursuant to the CARES Act.  The CARES Act permits inmates to seek relief from the BOP, which may place a prisoner "in home confinement for the short of 10 percent of the term of imprisonment of that prisoner or 6 months."[18]  Under the CARES Act, "if the Attorney General finds that emergency conditions will materially affect" BOP functioning, the Director of the BOP may "lengthen the maximum amount of time for which [he] is authorized to place a prisoner in home confinement" under § 3624(c)(2).[19]  The Attorney General has declared that because of COVID-19, "emergency conditions are materially affecting the functioning" of the BOP, and thus the Director of BOP has authority to grant home confinement to a larger group of prisoners.[20]

Although Defendant is correct that the Director of the BOP has expanded authority to put prisoners on home confinement because of COVID-19, the Court lacks jurisdiction to order home detention under this provision.[21]  Defendant should address his request for home confinement under the CARES Act to his case manager at the BOP.

---

[17] *Perry*, 2020 WL 1676773, at *2 n.2.

[18] 18 U.S.C. § 3624(c)(2).

[19] Pub. L. No. 116-136, § 12003(b)(2).

[20] *See* Memorandum from Attorney Gen. William Barr to Dir. Bureau of Prisons, Apr. 3, 2020, https://www.justice.gov/file/1266661/download.

[21] *See United States v. Brown*, No. 12-20066-KHV, 2020 WL 1935053, at *2 (D. Kan. Apr. 22, 2020) (citing *United States v. Engleson*, No. 13-CR-340-3(RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (holding while court can recommend relief, the ultimate decision whether to release inmate to home confinement rests with the BOP)).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Guillermo Morales' Motion for Sentence Reduction and Release to Home Confinement (Doc. 611) is **DISMISSED for lack of jurisdiction.**

**IT IS SO ORDERED.**

Dated: June 17, 2020

                                           S/ Julie A. Robinson
                                           JULIE A. ROBINSON
                                           CHIEF UNITED STATES DISTRICT JUDGE